## WELLS v. WELLS.

### No. 9415.

Court of Civil Appeals of Texas. Austin.

Nov. 24, 1943.

Brin & Cate, of Terrell, for appellant.

Wm. E. Davenport and W. A. Johnson, both of San Angelo, for appellee.

McCLENDON, Chief Justice.

This is a divorce suit. The appeal is by the wife from a judgment granting the husband a divorce, in a trial to the court.

The sole ground for the divorce was three years desertion by the wife; and the appeal presents but two issues; whether plaintiff established "upon full and satisfactory evidence" (R.C.S. Art. 4632):

1. That he resided in Tom Green County for "six (6) months next preceding the filing of the suit" (R.C.S. Art. 4631, Vernon's Ann.Civ.St. art. 4631); and

2. The material allegations supporting his claim of three years abandonment.

Since we are deciding the first issue in the negative, it will not be necessary to consider the second.

The testimony of plaintiff and defendant was the only evidence adduced at the trial. That of plaintiff upon this issue was to the following effect: They were married in Kaufman County, Texas, October 7, 1932, and lived at Terrell (that county) until October 8, 1937, when the separation took place. He was working for a broom factory at Terrell for about 15 years "off and on." He had lived in Childress about a year, from which place he was inducted into the army about nine months before the trial; and for the preceding two years he worked on a farm in Rockwall County. In the first registration (1940) for army service, he registered in Rockwall County, but "used Terrell, Kaufman County," as his home. Upon being drafted he was sent to Mineral Wells, where he remained only a few days and was then transferred to the Concho Air Field, near San Angelo, where he had been quartered at the air field barracks ever since (nearly nine months). His evidence in support of his residence in Tom Green County is embodied in the following:

"Q. Since you came out here have you made up your mind as to what place you are going to make your home? A. If I live through the war I have decided to make San Angelo my home.

"Q. Who did you ever tell that to? A. To the girl I have been going with.

"Q. Have you made an effort to find a place? A. Yes, if I get over this I will find a place and call this my home.

"Q. Do the girl's people live here? A. No, she has a brother in the army."

On cross-examination he testified: This girl is in the court room "sitting back there with the dark glasses on"; he intended to marry her if he was granted a divorce, and "if nothing happens"; he was going with her "pretty steady" and had been "since probably a month after I came here"; he visited with her whenever he had time. (Incidentally, it may be noted that defendant alleged in her answer that "the real reason and cause of plaintiff's suit for divorce is because he has become enamored of another dusky damsel, whom he has promised to marry, if and when he has secured his divorce from defendant"; an aggravating circumstance, however, may have been the fact that defendant was getting $22 per month of his army pay. He admitted writing to defendant for a loan of $15, explaining that this was "because she had put in for her allotment unknown to me and I thought it was nothing but right that she give me some part of the money.")

The girl was not called as a witness.

██ The instant case is ruled by the decision in Tex.Civ.App., Gallagher v. Gallagher, 214 S.W. 516, with the holdings in which we are in complete accord. The opinion is a well considered one by Chief Justice Fly of the San Antonio court, shows careful research and gives an extensive review of the authorities upon the subject of the establishment of a residence by one in the military service at a place where he has been stationed. The facts of that case are not as strong, in some respects, against such establishment, as those at bar. The plaintiff there had been in the army much longer, had been stationed at San Antonio (the place he claimed as his residence) for about two years, and his wife had accompanied him there. The gist of the decision may be stated as follows: While recognizing that one in military service may establish a residence at a place where he is stationed, this may not be shown by the testimony of the plaintiff alone of his intentions, uncorroborated by any act indicative of those intentions. It would serve no useful purpose to review

the facts of that case or to quote from the supporting authorities.

In a supplemental brief appellant cites and quotes from the case of Pettway v. Pettway, Tex.Civ.App., 177 S.W.2d 285, decided November 12, 1943, by the El Paso court. We have not had access to a full copy of that opinion, but from the quotations it appears to be practically an all fours case with that at bar, and follows the holdings in the Gallagher case.

Aside from his own testimony as to his intentions of future residence, there is no evidence in the record of any act corroborative of those intentions. Nor, according to his own testimony, did he ever communicate those intentions to anyone except the girl he was intending to marry, and she, although present at the trial, was not called to testify. He did not go to Tom Green County voluntarily, but was sent there, and there remained under military orders, and was subject to be transferred from there at any time. His asserted secret intentions to make his home there, if and when he was discharged from the army, was not formed until after he was stationed at the air field. A residence in Tom Green County was manifestly not established "upon full and satisfactory evidence."

The only other Texas case to which we are cited which seems to bear directly upon the precise issue here presented is Warfield v. Warfield, Tex.Civ.App., 161 S.W.2d 533, 534. That case is clearly distinguishable from the Gallagher case (as the opinion shows) and from the instant case, as appears from the following resume of its material facts (after reciting the controlling facts in the Gallagher case): "Whereas, the appellee here testified that he had, several days subsequent to his arrival in Galveston after his army assignment there had become effective, concluded that he liked the town, and then and there decided that he would make it a place of residence. He was shown by the uncontroverted testimony of a number of corroborating witnesses, most of them his fellow-officers and associates in the army, others being people with whom he did business, to have stated to them that he had adopted and intended to maintain Galveston as his residence; that he proceeded at that very time to make it so, rented an apartment there, for which he bought furniture, and married the appellant, establishing the home wherein they had lived as husband and wife for one

whole year before he exhibited his petition for divorce in this suit."

The trial court's judgment is reversed, and the case (apparently having been fully developed, upon the issue of residence) is dismissed without prejudice to appellee's right to institute another suit in a proper forum.

Reversed and dismissed without prejudice.